UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


PVP-Salem Associates, L.P.

     v.                         Civil No. 04-cv-386-JD
                                   Opinion No. 2006 DNH 028
Parlex Corporation


O R D E R


PVP-Salem Associates, L.P. ("PVP-Salem") has moved for
partial summary judgment on the issue of liability on its breach
of contract claim against Parlex Corporation, which arises out of
PVP-Salem's lease of commercial property to Parlex.  PVP-Salem
also seeks summary judgment on the on Parlex's counterclaims.
Parlex has filed an objection to PVP-Salem's motion for summary
judgment which does not address the motion insofar as it requests
summary judgment on the counterclaims.[1]

PVP-Salem filed a reply to Parlex's objection on January 17,
2006.  On February 6, 2006, Parlex filed a motion for leave to
file a sur-reply without notifying either the court or opposing
counsel of its intention to do so beforehand, as required by L.R.
7.1(e)(3).  Furthermore, the motion fails to contain the

---

[1]In its objection, Parlex also purported to cross-move for
summary judgment on PVP-Salem's consumer protection act claim.
In an order issued December 21, 2005, however, the court notified
Parlex that its filing had been accepted only as an objection to
PVP-Salem's motion, and not as a cross-motion, because the filing
failed to comply with L.R. 7.1(a)(1).  Parlex has not since
separately filed its cross-motion as the rule requires.

certification that Parlex attempted to obtain PVP-Salem's consent
to the relief sought prior to filing as required by L.R. 7.1(c),
and was untimely pursuant to L.R. 7.1(e)(3).  Parlex's motion for
leave to file the sur-reply is therefore denied; the sur-reply
will not be considered in ruling on the summary judgment motion.
The attorneys who filed the motion for leave are reminded that
they attested to their familiarity with the local rules of this
court in obtaining leave to appear here pro hac vice.  Parlex's
counsel shall review the local rules before making any more
filings in this court.

### Standard of Review

On a motion for summary judgment, the moving party has the
burden of showing the absence of any genuine issue of material
fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
If the movant does so, the court must then determine whether the
non-moving party has demonstrated a triable issue.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In ruling on a
motion for summary judgment, the court must view the facts in the
light most favorable to the non-moving party, drawing all
reasonable inferences in that party's favor.  E.g., J.G.M.C.J.
Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 368 (1st Cir. 2004);
Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004).

Background

Parlex occupied approximately 46,000 square feet of industrial space in Salem, New Hampshire, under a written lease with PVP–Salem dated August 12, 1997.  Parlex used the space to manufacture laminated cable.  To that end, it made a number of improvements to the premises during its occupancy, including the installation of walls, ceilings, flooring, lighting, and air conditioning and sprinkler systems.  Some of these improvements were undertaken during the terms of prior leases between Parlex and PVP–Salem or its predecessor–in–interest.  In fact, Dennis Frongillo, who served as Parlex's facilities manager during the events at issue, recalls that the company made "extensive alterations" to the premises prior to 1997.  Frongillo Aff. ¶ 3.

Though the 1997 lease had a term of ten years, it gave Parlex the right to terminate the lease three years early, provided, in relevant part, that Parlex was "not in material default under the terms of [the] Lease . . . on the Early Termination Date," which the lease defines as June 30, 2004. Mem. Supp. Mot. Summ. J., Ex. 1, § 40(a)(2).  This provision also required Parlex, on or before the end of the day on June 30, 2004, to "vacate and surrender the Premises to the Landlord in the condition required by [the] Lease for surrender of the Premises upon expiration of the Term."  Id. § 40(b).

The parties have identified two provisions of the lease

dealing with the required condition of the premises at the
lease's end.  The first, section 11(c), states:

> Except for Tenant's fixtures, furniture, machinery,
> equipment and personal property, including any HVAC
> equipment installed by the Tenant, all Alterations
> shall be the property of the Landlord and shall remain
> on the Demised Premises upon termination of the Lease,
> or, if Landlord so requires, a portion of or all
> Alterations shall be removed by Tenant on or prior to
> the termination of the Lease and Tenant shall restore
> the Demised Premises substantially to its condition
> prior to such Alterations . . . .

Mem. Law Supp. Mot. Summ. J., Ex. 1, § 11(c).  Under the relevant
portions of the second such provision, section 20,

> Upon termination of the lease, Tenant shall surrender
> the Demised Premises to Landlord broom clean, and in
> good order and condition, except for ordinary wear and
> tear . . . .  Tenant shall remove its machinery and
> equipment and repair any damage to the Demised Premises
> caused by such removal.  Tenant shall not remove any
> power wiring or power panels, lighting or lighting
> fixtures, wall coverings, blinds or other window
> coverings, carpets or other floor coverings, heaters or
> air conditioners or fencing or gates, except if
> installed by Tenant and required by Landlord to be
> removed from the Demised Premises . . . .  The
> foregoing shall not be construed to prevent Tenant from
> removing its movable trade fixtures and non-structural
> improvements, it being understood and agreed that such
> movable trade fixtures and non-structural improvements,
> including HVAC purchased and installed at Tenant's
> expense, shall be removed by Tenant, at Tenant's cost
> and expense, at or prior to the expiration . . . of the
> Term of this lease.  Any damage to the Premises and/or
> the Property caused by said removal shall be repaired
> by Tenant at its cost and expense.

Id. § 20.  On June 27, 2003, Parlex formally notified PVP-Salem
of its exercise of its right of early termination in the manner
required by the lease, including the payment of an "early

4

termination fee" equal to three months' rent.  <u>Id.</u> § 40(a)(3).

Parlex had first informed PVP-Salem in October, 2001, of its intent to vacate the premises before the expiration of the lease term due to a downturn in business.  Parlex then began efforts to find a tenant to sublease the premises, engaging a real estate broker who eventually brought two proposals to PVP-Salem.  The first proposal entailed subletting the space to a new tenant, but for less rent than Parlex owed under the lease, so that Parlex would remain responsible for at least part of the difference.  Although PVP-Salem and Parlex engaged in preliminary negotiations over this proposal, Parlex failed to respond to PVP-Salem's entreaties to submit the information about the potential subtenant which the lease required as a condition of the landlord's approval of any sublease.

The second proposal, involving another potential subtenant, ultimately developed into another subtenant's offer to buy the property for what PVP-Salem considered an unattractive price.  PVP-Salem therefore rejected that proposal.  Parlex never asked PVP-Salem to approve any assignment or sublease of the premises in the manner required by the lease.

Beginning in February 2004, the parties' representatives engaged in a number of discussions about the condition they expected the premises to be in when Parlex moved out.  The resolution of this issue was complicated by, among other things,

5

a disagreement over Parlex's obligation to remove alterations it had installed before the 1997 lease took effect.  Specifically, Parlex maintained that PVP-Salem had waived its right to require the removal of such alterations under a "Termination of Lease Rider," attached to the 1997 lease, under which PVP-Salem released Parlex from any "Claims which Landlord may have against Tenant . . . as a result of or in connection with . . . [its] use and occupancy of the premises at all times prior to the Commencement Date of the New Lease . . . ."  Mem. Supp. Mot. Summ. J., Ex. 1, at 34.

Although the various participants in the 2004 discussions remember them somewhat differently, those on the Parlex side maintain that, in the words of its general manager, Todd Rousseau, "PVP-Salem never made [its] requirements regarding the removal of alterations clear" until May 27, 2004.[2]  Rousseau Aff. ¶¶ 6, 8.  On that day, PVP-Salem sent a letter to Parlex, via overnight delivery, providing "Notice that Landlord requires, prior to the June 30, 2004 Early Termination Date, all Alterations to be removed and the Demised Premises substantially restored to its condition prior to such Alterations being made."

---

[2]As PVP-Salem points out, Rousseau also states that, "in late April or early May 2004," he was informed that PVP-Salem wanted Parlex to remove "all of [its] alterations that had been installed during the then-current lease . . . ."  Rousseau Aff. ¶ 9.  Whether Rousseau learned of PVP-Salem's wishes in this regard in late April, rather than late May, however, has no effect on the outcome of the summary judgment motion.

Mem. Law Supp. Mot. Summ. J., Ex. 19.  If Parlex failed to do so, the letter continued, it would be in default under the lease, "in which event, among other things, the Term of the Lease would not expire on the Early Termination Date."  Id.  Parlex responded, through counsel, "that it [was] not required to remove any alterations on the Premises" and that its failure to do so would therefore not constitute default.  Id., Ex. 20.

Nevertheless, by May, 2004, Parlex had begun soliciting estimates from contractors for the cost of demolishing ceilings and walls, removing components of the ventilation system, and otherwise restoring the premises to the condition they were in at the beginning of the 1997 lease.  Parlex had also started making its own minor repairs to the premises around that time, but halted them when David Morin, a broker who PVP-Salem had hired to find a new tenant for the space, informed Parlex that some of the walls being fixed had been earmarked for demolition by PVP-Salem.

Parlex had started moving out of the premises in November, 2002, and had largely shut down its operations there by January, 2003.  By June 30, 2004, Parlex had removed its equipment from the space, though some of it remained in the parking lot outside for an additional week or so.  PVP-Salem notified Parlex on July 7, 2004, however, that it was "still in occupancy of the premises" as of the beginning of that month and, accordingly, would be treated as a "Holdover Tenant" subject to additional

7

charges per the lease.  Mem. Law Supp. Mot. Summ. J., Ex. 22.

PVP-Salem's property manager, Brian Mitchell, had a key to the premises at this time.  Mitchell did not, however, know the code for the security system Parlex had installed, so he had to rely on a Parlex employee to disarm it whenever he wanted to enter the premises.  On August 13, 2004, PVP-Salem told Parlex that "we still do not have a key to your premises, the alarm system has not been deactivated and we do not have the code," and that, as a result, PVP-Salem did not consider itself in possession of the premises.  Mem. Law Supp. Mot. Summ. J., Ex. 29.  Parlex maintains that Morin had access to the premises whenever he wanted, though he obtained neither a key nor the code to the security system from Parlex until August 18, 2004.[3] Throughout July and August, 2004, the parties continued to correspond regarding restoration work to be done on the premises, but, ultimately, no further work took place.[4]

Parlex did not deactivate the alarm system for the premises

---

[3]When Morin asked Rousseau for a key to the premises at the end of the lease, Rousseau instructed him to ask PVP-Salem's president, Paul Profeta, to authorize Parlex to release a key to Morin.  Profeta provided written authorization to that effect on July 8, 2004.  It is unclear why Morin did not receive the key until more than a month later.

[4]In an August 23, 2004, letter to Parlex, PVP-Salem suggested that the parties agree on a scope of work "before we go any further" and notified Parlex "that we will not allow any work to be done in that fashion unless you comply with the terms and conditions of the lease."  Mem. Law Supp. Mot. Summ. J., Ex. 41.

until sometime in October, 2004.  Parlex maintains, however, that
the "system was removed as promptly as possible after Parlex
determined that it would not reach an amicable resolution of its
dispute with PVP-Salem" regarding the necessary restoration work.
Rousseau Aff. ¶ 11.  In fact, Parlex's chief financial officer,
Jonathan Kosheff, insists that the company "would have gladly
taken any and all steps [PVP-Salem] requested" to return it to
possession of the premises had it simply made such a request,
because Parlex had no interest in retaining possession after the
end of the lease term.  Kosheff Aff. ¶ 10.  PVP-Salem demanded
rent from Parlex for the months of July, August, and September,
2004, totaling $223,487.82, which Parlex has not paid.

On October 14, 2004, PVP-Salem commenced this action against
Parlex.  The amended complaint asserts claims for breach of
contract, breach of the implied covenant of good faith and fair
dealing, "tortious interference with prospective advantageous
relations," and violation of the New Hampshire Consumer
Protection Act, Revised Statutes Annotated ("RSA") 358-A.


<u>Discussion</u>

I.   <u>PVP-Salem's Breach of Contract Claim</u>

In seeking summary judgment on its own breach of contract
claim against Parlex, PVP-Salem argues that "[t]here is no
genuine issue of material fact that Parlex has breached the lease

in at least 5 ways."  Mem. Law Supp. Mot. Summ. J. at 19.
Specifically, PVP-Salem contends that Parlex failed (1) to
"vacate and surrender" the premises to PVP-Salem by June 30,
2004, as required by section 40 of the 1997 lease, (2) to remove
the alterations from the premises, as required by section 11(c),
(3) to remove additional items, as required by section 20, and
(4) to leave the premises "in good order and condition, except
for ordinary wear and tear," as further required by section 20.
As the fifth breach, PVP-Salem asserts that Parlex, having failed
to comply with these conditions for early termination by June 30,
2004, remains liable for rent through the end of the original
term, which Parlex has not paid.

The court will address these contentions in order.  At the
outset, however, the court notes that "[w]here, as is the case
here, the party moving for summary judgment bears the burden of
proof on an issue, he cannot prevail 'unless the evidence that he
provides on that issue is <u>conclusive</u>.'"  <u>EEOC v. Union
Independiente de la Autoridad de Acueductos y Ancantarillados de
P.R.</u>, 279 F.3d 49, 55 (1st Cir. 2002) (quoting <u>Torres Vargas v.
Santiago Cummings</u>, 149 F.3d 29, 35 (1st Cir. 1998)).

A.   <u>Whether Parlex Failed to Vacate and Surrender the
     Premises</u>

Section 40 of the lease simply provides, in relevant part,
that Parlex "shall vacate and surrender the Premises to Landlord"

by June 30, 2004, without defining "vacate and surrender" any more specifically.  Mem. Law Supp. Mot. Summ. J., Ex. 1, § 40(b). As the primary support for its contention that Parlex violated this provision as a matter of law, PVP-Salem argues that "Parlex continued to control its security system--and thus the Leasehold Premises--<u>for more than 3 months after</u> June 30, 2004."[5] Reply at 10.  Ordinarily, however, "the issue . . . as to when relinquishment of possession [of a leasehold] occurred . . . is purely factual in nature." <u>Phelan v. L.M. & L. Corp.</u>, 123 N.H. 294, 295 (1983) (per curiam); <u>see also</u>, <u>e.g.</u>, <u>Nehi Bottling Co. v. All-Am. Bottling Corp.</u>, 8 F.3d 157, 163 (4th Cir. 1993) (applying Virginia law); <u>Caserta v. Action for Bridgeport Cmty. Dev., Inc.</u>, 377 A.2d 856, 857 (Conn. Super. Ct. 1976); <u>J.M. Beals Enters. v. Indus. Hard Chrome, Ltd.</u>, 648 N.E.2d 249, 251 (Ill. App. Ct. 1995); <u>Nathan Lane Assocs. v. Merchants Wholesale of Iowa, Inc.</u>, 698 N.W.2d 136, 138-39 (Iowa 2005); <u>Lordae Realty Corp. v. Montefiore Med. Ctr.</u>, 648 N.Y.S.2d 598 (N.Y. App. Div. 1996); 2 Milton R. Friedman & Patrick A. Randolph, Jr., <u>Friedman on Leases</u> § 18:4:1 (5th ed. 2004).

Here, despite the fact that the alarm system remained in operation until October 2004, Parlex has come forward with evidence suggesting that PVP-Salem had access to the space

---

[5]PVP-Salem also points out that Parlex still retained keys to the premises and had yet to remove the alterations.  Parlex's failure to remove the alterations is discussed <u>infra</u> at Part I.B.

starting on June 30, 2004.  Although Mitchell needed to rely on Parlex to disarm the system before he could enter the premises, he does not suggest that Parlex ever refused to do so.  Parlex recalls that Morin, PVP-Salem's agent, also had access to the premises upon request.  Finally, though the parties continued to joust over Parlex's responsibility to remove certain alterations, Parlex had taken all of its equipment from the space by June 30, 2004.  These facts preclude the determination, as a matter of law, that Parlex breached the lease by failing to vacate and surrender the premises on time.  See, e.g., Gooding Realty Corp. v. Bristol Bay CVS, Inc., 763 A.2d 650, 653-54 (R.I. 2000) (noting that tenant's retaining key and maintaining utilities for premises beyond lease termination did not permit ruling as matter of law that occupancy continued); Centurian Development Ltd. v. Kenford Co., 400 N.Y.S.2d 263, 266 (N.Y. App. Div. 1977) (ruling that tenant surrendered premises "despite its retention of a key and the sporadic re-entry by its employees to sell or inspect the tools and furniture which continued to be stored there"); cf. Muse v. Merrimack Valley Nat'l Bank, 114 N.H. 700, 702 (1974) (noting, without discussion, that tenant's leaving trailer in mobile home park after eviction created holdover tenancy).

B.   <u>Whether Parlex Failed to Remove Alterations, to Remove
     Other Items, or to Leave the Property in Good Order and
     Condition</u>

Section 11(c) of the lease provides that "<u>if Landlord so
requires</u>, a portion of or all Alterations shall be removed by
Tenant on or prior to the termination of the Lease and Tenant
shall restore the Demised Premises substantially to its condition
prior to such Alterations . . . ."  Mem. Law Supp. Mot. Summ. J.,
Ex. 1, § 11(c) (emphasis added).  The summary judgment record
establishes that "Alterations," defined in the lease as
"alterations, additions or improvements to the Demised Premises,
whether structural or non-structural," <u>id.</u> § 11(a), remained in
the premises after June 30, 2004.

As Parlex points out, however, a genuine issue of fact
exists as to whether PVP-Salem "required" Parlex to remove those
alterations in the manner contemplated by the lease.  "Under a
lease that requires a tenant to remove his installations and
restore the premises, if or to the extent the landlord shall
elect, tenant is not liable for restoration unless the landlord
makes the election."  2 Friedman & Randolph, <u>supra</u>, § 18:1
(footnote omitted).  PVP-Salem insists that, through its letter
of May 27, 2004, it unequivocally notified Parlex of its election
to mandate the removal of all alterations installed during the

1997 lease.[6]  Parlex rejoins, however, that a factual issue
remains at to whether this notice, given less than five weeks
prior to the June 30, 2004, early termination date, provided
sufficient time to do the required work.

Because the lease is silent on when the landlord must
provide notice of its election to require the removal of
alterations, it is "subject to the general rule that a contract
lacking a designation of specific time for performance obligates
the parties to perform within a reasonable time." Erin Food
Servs., Inc. v. Derry Motel, Inc., 131 N.H. 353, 360 (1988)
(citing Smith v. Boston, Concord & Montreal R.R., 36 N.H. 458
(1858)).  Whether one party to a contract has given notice to the
other within a reasonable time generally presents a question of
fact.  See, e.g., Colonial Life Ins. Co. of Am. v. Elec. Data
Sys. Corp., 817 F. Supp. 235, 244 (D.N.H. 1993); Fairhaven
Textile Corp. v. Sheehan, Phinney, Bass & Green, 695 F. Supp. 71,
77 (D.N.H. 1988); Ward v. Md. Cas. Co., 71 N.H. 262, 264 (1902).
Here, the significant work necessary to remove all alterations
made during the 1997 lease presents a factual issue as to whether
PVP-Salem informed Parlex of its decision to that effect within a

[6]PVP-Salem also argues that it notified Parlex of the
election through "multiple oral communications . . . beginning in
February, 2004."  Reply at 6.  As previously discussed, however,
the substance of those communications remains in dispute.
Furthermore, as Parlex notes, the lease requires all notices to
be given in writing.  Mem. Law Supp. Mot. Summ. J., Ex. 1, § 35.

reasonable time as required by the lease.[7]

PVP-Salem counters in its reply brief that Parlex nevertheless "had no excuse but to perform" by removing the alterations, despite any allegedly unreasonable notice, by virtue of section 22 of the lease.  Reply at 6.  According to PVP-Salem, that provision would have allowed Parlex as much time as it needed to complete the work so long as it was commenced within thirty days of the May 27 notice and proceeded "diligently." Mem. Law Supp. Mot. Summ. J., Ex. 1, §§ 22(a)(1)(ii), (a)(2). Because PVP-Salem did not mention section 22 in its primary memorandum in support of its summary judgment motion, however, the court will disregard this argument.[8]  See M & D Cycles, Inc. v. Am. Honda Motor Co., 208 F. Supp. 2d 115, 122 (D.N.H. 2002). In any event, while section 22 arguably has some relevance to whether PVP-Salem provided notice within a reasonable time, it does not resolve that question as a matter of law, particularly because the May notice specifically demanded that the work be

---

[7]As previously noted, see note 2, supra, the fact that Rousseau learned in late April or early May of PVP-Salem's wishes in this regard does not permit the conclusion, as a matter of law, that reasonable notice was given.

[8]The court will similarly disregard PVP-Salem's argument, also made for the first time in its reply memorandum, that Parlex breached the implied covenant of good faith and fair dealing under the lease by failing to proceed in accordance with section 22.  This argument relies not only upon a provision of the lease, but upon an entire theory of relief, that was omitted from PVP-Salem's primary memorandum.  See Stenson v. McLaughlin, 2001 DNH 159, 2001 WL 1033614, at *6 (D.N.H. Aug. 24, 2001).

completed by June 30.  Mem. Law Supp. Mot. Summ. J., Ex. 19.

PVP-Salem further contends that section 20 of the lease independently required Parlex to "remove its machinery and equipment and repair any damage to the Demised Premises caused by such removal," id., Ex. 1, § 20, which it failed to do.  Because such items are exempted from the operation of section 11(c), according to PVP-Salem, Parlex's obligation to remove them was not contingent upon the landlord's election to that effect.  Yet even assuming, for purposes of the summary judgment motion, that this interpretation of the lease is correct, genuine issues of fact remain as to whether Parlex failed to remove its machinery and equipment and repair any resulting damage under section 20.

PVP-Salem seeks summary judgment on its claim that Parlex breached section 20 on the basis of more than 100 photographs of the premises taken in February and June, 2005, illustrating the conditions of the premises as Parlex left them.  But, other than a brief notation which accompanies each photograph, PVP-Salem has not provided any explanation as to what any of them show.  Most significantly, PVP-Salem does not indicate whether each of the photographs depicts "machinery and equipment" which Parlex was arguably required to remove under section 20 or "Alterations" subject to the notice provision of section 11(c).  Because, as the court has just determined, an issue of material fact exists as to whether PVP-Salem complied with the notice provision, the

photographs do not conclusively establish that Parlex breached
its obligations to restore the premises under the lease, even if
the notice provision does not apply to section 20.

Furthermore, Rousseau has submitted an affidavit with
Parlex's opposition explaining that a number of the photographs
depict "items that do not constitute alterations under the 1997
lease and therefore Parlex was not required to remove [them]."
Rousseau Aff. ¶¶ 12(b), 13(b).  As noted supra, when the parties
entered into the 1997 lease, they signed a "Termination of Lease
Rider" under which PVP-Salem released Parlex from any "Claims
which Landlord may have against Tenant . . . as a result of or in
connection with . . . [its] use and occupancy of the premises at
all times prior to the Commencement Date of the New Lease
. . . ." Mem. Law Supp. Mot. Summ. J., Ex. 1, at 34.  In two
footnotes in its reply brief, PVP-Salem argues that this
provision does not relieve Parlex of its obligations under the
1997 lease to remove alterations installed during prior leases
because the installations did not violate the terms of those
prior leases and therefore would not have given PVP-Salem any
"claim" against Parlex subject to the release.

PVP-Salem, however, does not provide any evidentiary support
for this argument, apart from Profeta's conclusory assertion that
"to the best of [his] knowledge and belief, none of PVP-Salem's
rights [under the prior lease] had been violated and thus given

17

rise to a claim."[9]  Second Profeta Decl. ¶¶ 6-7.  PVP-Salem also does not indicate which of the alterations depicted in the photographs were installed during the 1997 lease.  PVP-Salem has therefore failed to demonstrate its entitlement to summary judgment on the issue of whether the alterations depicted in the photographs pre-existed the 1997 lease.  See Gargano v. Heyman, 525 A.2d 1343, 1347 (Conn. 1987) (holding that, to recover for tenant's failure to repair damage to premises, landlord must show "'with reasonable certainty the condition of the premises . . . at the inception of the term [and] . . . the specific items of damage . . . .'") (quoting 2 Friedman & Randolph, supra, § 18:1).

PVP-Salem also claims that Parlex failed to leave the premises "in good order and condition, except for ordinary wear and tear," as also required by section 20.  Mem. Law Supp. Mot. Summ. J., Ex. 1, § 20.  Like the argument that Parlex failed to remove its "machinery and equipment," this argument rests on the photographs, which show a variety of what appears to be superficial damage to parts of the premises.  Whether this damage

---

[9]One of the prior leases, dated July 8, 1992, prohibited Parlex from "any structural alterations or additions to the Leased Premises without Landlord's prior consent," but permitted "nonstructural alterations, additions, and improvements . . . provided that [they] do not interfere in any way with the operation of the Landlord's building service and mechanical systems and/or the existing demising walls."  Opp'n Mot. Summ. J. Ex. 6, Art. 9.1.  PVP-Salem provides no analysis of whether the alterations Parlex undertook during the 1992 lease were "structural" or "non-structural" and thus no basis for concluding that those alterations did not breach the lease.

amounts to "ordinary wear and tear," however, presents a question of fact.  See, e.g., Barge & Ship Serv., Inc. v. River Fleets, Inc., 420 So. 2d 1176, 1178 (La. Ct. App. 1982); Codman v. Hygrade Food Prods. Corp. of N.Y., 3 N.E.2d 759, 760-61 (Mass. 1939); Ed Miller & Sons, Inc. v. Earl, 502 N.W.2d 444, 451 (Neb. 1993); Brandt v. Benedict Enters., Inc., 1990 WL 103750, at *6 (Ohio Ct. App. July 25, 1990) (unpublished); Wight v. Callaghan, 408 P.2d 908, 909 (Utah 1965).  Indeed, in his affidavit in opposition to the summary judgment motion, Rousseau avers that much of the damage depicted in the photographs is not as serious as the accompanying comments suggest.  The court cannot rule as a matter of law, then, that Parlex breached section 20 by failing to repair the damage shown in the photographs.

C.   Parlex's Failure to Pay Rent After June 30, 2004

Finally, PVP-Salem claims that Parlex has breached the lease by failing to pay any rent on the premises after June 30, 2004. As PVP-Salem recognizes, however, Parlex had no obligation to pay rent if it complied with the conditions for early termination of the lease set out in section 40.  While PVP-Salem contends that Parlex did not, in fact, satisfy a number of those conditions, the court has just determined that it cannot reach that conclusion as a matter of law.  Because PVP-Salem has not conclusively shown that Parlex had any responsibility to pay rent

19

following June 30, 2004, its motion for summary judgment on this
ground is denied.


II.  <u>Parlex's Counterclaims</u>

        PVP-Salem has also moved for summary judgment on Parlex's
counterclaims for (1) violation of RSA 358-A, (2) abuse of
process, (3) tortious interference with contractual and business
relations, and (4) a declaratory judgment that PVP-Salem breached
the lease and caused damages to Parlex.  Parlex's opposition to
PVP-Salem's summary judgment motion does not address the
counterclaims.  Nevertheless, the court cannot grant a motion for
summary judgment merely because the non-moving party has failed
to file a response; "it must assure itself that the moving
party's submission shows that 'there is no genuine issue as to
any material fact and the moving party is entitled to judgment as
a matter of law.'"  <u>NEPSK, Inc. v. Town of Houlton</u>, 283 F.3d 1, 7
(1st Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).

        Parlex's counterclaim contains only one paragraph of factual
allegations relevant to its claims for violations of RSA 358-A
and tortious interference.  This paragraph states that PVP-Salem
"unreasonably withheld and/or delayed without justification
consenting to any of the particular proposals brought to it by
Parlex" for subletting or assigning its interest in the lease.
Countercl. ¶ 11.  The materials submitted with PVP-Salem's motion

for summary judgment, however, belie this charge.  In fact, Parlex brought only one such proposal to PVP-Salem; though the landlord showed some interest, the deal petered out when Parlex ignored PVP-Salem's requests to provide the information about the potential subtenant required to obtain the its consent to such an arrangement under the lease.[10]  PVP-Salem is therefore entitled to summary judgment on Parlex's counterclaims for violation of RSA 358-A and tortious interference with business relations.

In support of Parlex's abuse of process counterclaim, Parlex alleges that PVP-Salem's complaint "consist[s] of spurious, unfounded allegations . . . .  This action was commenced against Parlex without basis and was done frivolously and maliciously with intent to harm Parlex."  Countercl. ¶ 12.  "One who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."  Cabletron Sys., Inc. v. Miller, 140 N.H. 55, 57 (1995) (internal quotation marks omitted).  The summary judgment record contains no evidence that PVP-Salem has maintained this proceeding primarily for such a purpose.  Indeed, the evidence, even viewed in the light most favorable to Parlex, shows that PVP-Salem seeks to recover money

---

[10]The other proposal did not involve an assignment or a sublease at all, but a third party's offer to purchase the property.  Parlex does not allege that PVP-Salem wrongfully rejected this offer.

21

it believes Parlex owes under the lease--an entirely legitimate objective.  PVP-Salem is therefore entitled to summary judgment on Parlex's counterclaim for abuse of process.  See Clipper Affiliates, Inc. v. Checovich, 138 N.H. 271, 277 (1994) ("There is no liability where a party has done nothing more than carry out the process to its authorized conclusion, even though with ulterior intentions.").

Finally, in support of Parlex's counterclaim for a declaratory judgment that PVP-Salem committed a "substantial breach of the terms and conditions of the Lease" causing Parlex "substantial monetary damages," Countercl. ¶¶ 25(b)-(c), Parlex alleges only "that the calculated actions by PVP-Salem in refusing to comply with the terms and conditions of the Lease constitutes [*sic*] a substantial breach of contract . . . ."  Id. ¶ 25.  Neither the counterclaim nor the summary judgment record, however, identifies any "terms and conditions" of the lease which PVP-Salem breached.  PVP-Salem is therefore entitled to summary judgment on Parlex's claim for a declaratory judgment.


Conclusion

For the foregoing reasons, PVP-Salem's motion for partial summary judgment (document no. 15) is DENIED as to its claim for breach of contract but GRANTED as to Parlex's counterclaims.

22

Parlex's motion for leave to file a sur-reply (document no. 24)

is also DENIED.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 28, 2006

cc:  Anthony S. Augeri, Esquire
     R. David DePuy, Esquire
     Edward A. Haffer, Esquire
     Edward D. Kutchin, Esquire
     Kerry R. Northrup, Esquire